## Peoria & Pekin Union Railway Company, Appellant, v. Corning & Company, Appellee.

### Gen. No. 5,880.

CARRIERS, § 204*—*when rate of switching charges fixed by interstate commerce act does not apply.* The rate of switching charges fixed by the interstate commerce act at Peoria does not apply to

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

switching of cars for a distilling company from its distillery to its warehouse within the limits of the city, where the goods were shipped to the warehouse to be held there without any knowledge of where they should be shipped when they should leave the warehouse.

Appeal from the Circuit Court of Peoria county; the Hon. Leslie D. Puterbaugh, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed April 15, 1914.

Stevens, Miller & Elliott, for appellant.

Evans & Evans, for appellee.

Mr. Presiding Justice Whitney delivered the opinion of the court.

This is an appeal from the judgment of the Circuit Court in a suit in *assumpsit* brought by appellant against appellee to recover the sum of $9,484, claimed to be due for certain switching and transportation furnished appellee at its instance and request. The case was tried without a jury and resulted in a judgment of $485.45.

The appellant is a railroad corporation organized under the general railway act of the State of Illinois, and doing a general railway business. Its main lines extended between the cities of Peoria and Pekin and it had extensive switching yards. Aside from the general railroad business, consisting in the carrying of passengers and property, it also transacts an extensive terminal and switching business, doing switching service for most of the roads entering the city of Peoria, and nearly all of said roads extend into other States.

Appellee is a corporation and for many years last past has been engaged in the business of distilling and selling spirits, alcohol and whiskey, and rectifying the same. In the conduct of its business it has erected and owns large and extensive plants, buildings and warehouses in the city of Peoria. Appellee makes ship-

ments to various points throughout the United States and other countries.

The suit was brought to recover from appellee switching charges covering several years at $2 a car, which is the rate fixed under the interstate commerce act for that period at Peoria. A corporation company of which appellee is the successor had a contract many years old with appellant under which appellant was bound to do switching for appellee at a price fixed in the contract at not exceeding $1 a car. The main part of the switching was between the distillery and the warehouse of appellee. One of the buildings was changed in location after the contract was made, but for years appellant went on shipping under the terms of the contract, thereby construing it to be effective notwithstanding the change in location of the building.

In 1906, appellant construed the interstate commerce act to apply to these charges and that it had no right to longer continue to ship for appellee at a price under the rate fixed by the interstate commerce law. The question arising in this case is whether the interstate commerce act applies to any or all of the business for which the suit was brought to recover. There is no question but that the act of Congress abrogates all contracts made before as well as after the act went into effect in conflict with the provisions of that law as to rates.

The trial court held in substance that switching cars from appellee's distillery to its warehouse was mere cartage; that when appellant, a common carrier, took goods from the distillery to the warehouse it was engaged in intrastate commerce, and that the interstate commerce act does not apply. It is probable, though not appearing clearly from the record, that the goods were shipped from the distillery to the warehouse to be held in the warehouse for months and years without any knowledge or intention of where they should be shipped when they should leave the warehouse.

It seems to us the transaction does not fall within the rule of cases that hold when a common carrier takes goods from one point to another with the view of transferring to a point out of the State, the first carrier is engaged in interstate commerce. Some of the goods for which charges were made were shipped from the warehouse to lines of railroads to be transported outside the State.

Appellant aided in billing certain of the goods which were to be shipped outside the State, and the trial court apparently held, as to those goods, they were started on an interstate journey when appellant took them from the warehouse, and that therefore the charge was controlled by the interstate commerce law, and as to them the $2 rate was allowed. It is claimed by appellant that a common carrier that is in part engaged in interstate commerce for a customer cannot discriminate in intrastate commerce; that if it could it might do indirectly what it could not do directly, by giving its customers an advantage in the intrastate business that would induce it to employ the same carrier for interstate business. We do not find such a position rests on any direct authority. It is also claimed by appellant that the contract is void under the State law. We cannot hold that this is so. We are of the opinion that the trial court reached the right conclusion unless there was some error in the data as to how much interstate commerce there was, and how much intrastate commerce there was, but no suggestion is made that any such mistake occurred in the trial court.

The judgment is affirmed.

*Affirmed.*